<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CONTINENTAL CASUALTY COMPANY,<br><br>              Plaintiff,<br><br>    v.<br><br>DD CARE MANAGEMENT, LLC,<br><br>             Defendant. | Case No. 3:21-cv-19806<br><br>**OPINION** |

<u>CASTNER, U.S.D.J.</u>

## I.    INTRODUCTION

This matter comes before the Court upon the Motion for Default Judgment filed by Plaintiff Continental Casualty Company ("Plaintiff") on February 16, 2022.  (ECF No. 7.)  Defendant DD Care Management, LLC ("Defendant") has not opposed the Motion.  Pursuant to Local Civil Rule 78.1(b), the Court will decide the Motion without oral argument.  For the reasons stated below, Plaintiff's Motion for Default Judgment is **GRANTED.**

## II.    BACKGROUND

The facts for this matter are derived from the Complaint, the Motion for Default Judgment, and the attached affidavits, affirmations, and exhibits.

    a.  *The Parties*

Plaintiff is an Illinois corporation engaged in the insurance business, with a principal place of business and a statutory home office in Chicago, Illinois.  (Complaint ¶ 1 ("Compl.") ECF No. 1.)  Plaintiff is authorized to transact business in New Jersey, and has in fact done so.  (*Id.*)

Defendant is a limited liability company organized under the laws of Florida, with a principal place of businesses in Neptune, New Jersey. (*Id.* ¶ 2.) According to the Complaint, the only members of DD Care Management are Henry Kaufthiel, who resides in New York, and Joshua Rothenberg, who resides in New Jersey. (*Id.* ¶ 3.)

   b. *Defendant's Purchase of the Worker's Compensation Policy*

Plaintiff issued worker's compensation policy No. WC 6 21731399 to Defendant, providing coverage that began on November 11, 2019 and expired on November 11, 2020. (*Id.* ¶7; (Workers Compensation and Employers Liability Insurance Policy No. WC 6 21731399 ("the Policy") ECF No 7-7 at 2.) The Policy would provide Defendant with insurance for certain liabilities, as agreed upon by the Parties. (Compl. ¶ 8.) The Policy's initial premiums were based on "estimated information submitted by DD regarding its estimated exposure … for the dates of coverage." (*Id.* ¶ 10.) According to the Policy, Defendant was provided with an initial Total Estimated Cost of $47,792.00. (Policy at 48-58.) Because the Policy's initial premium was based on estimated exposure, "the Policy is subject to a post-expiration audit based on actual exposures during the effective dates of coverage." (Compl. ¶ 11.) An audit of the Policy produced $144,085 in additional premiums. (*Id.* ¶ 12.) A copy of the Final Audit indicates that Defendant was previously charged with and is presumed to have paid Plaintiff a total of $52,759. (Final Audit ("Ex. C") ECF No. 7-8 at 2.) Defendant did not pay the additional premiums, and that failure to pay also incurred late charges totaling $20.00. (Compl. ¶ 14.) Plaintiff "issued DD invoices and/or demands for payment for the unpaid premiums," and "repeatedly demanded payment of the $144,105 balance." (*Id.* ¶¶ 16, 18.) Defendant has not paid the balance due, and currently owes Plaintiff a total of $144,105. (*Id.* ¶ 19.)

## III.   PROCEDURAL HISTORY

On November 5, 2021, Plaintiff filed a Complaint before this Court, bringing claims for Breach of Contract, Account Stated, and Unjust Enrichment.  (Compl. ¶¶ 20-38.)   Plaintiff requested a summons to be issued on November 5, 2021, and a summons was issued as to DD Care Management on November 8, 2021.  (ECF Nos. 2, 4.) The Complaint was served on Defendant on January 5, 2022.  (ECF No. 5.)  After being served with the Complaint, Defendant failed to answer, move, or otherwise respond.

On January 27, 2022, Plaintiff filed a request for entry of default against Defendant, which the Clerk entered that same day.  (ECF No. 6.)  Plaintiff filed a Motion for Default Judgment on February 16, 2022.  (Motion for Default Judgment ("MDJ") ECF No. 7.)

## IV.   LEGAL STANDARD

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a).  After an entry of default by the Clerk, the district court may enter a default judgement pursuant to Federal Rule of Civil Procedure 55(b)(2) against a properly served defendant who has failed to plead or otherwise defend an action.  *See Sourcecorp Inc. v. Croney*, 412 F. App'x 455, 458 (3d Cir. 2011).  "Once a party has defaulted, the consequence is that 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, No. 11-624, 2011 U.S. Dist. LEXIS 115142, at *4 (D.N.J. Oct. 5, 2011) (quoting *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 n.6 (3d Cir. 2005)).  However, "[d]efault judgment is permissible only if plaintiff's factual allegations establish a right to the requested relief."  *E. Constr. & Elec.,*

3

*Inc. v. Universe Techs., Inc.*, No. 10-1238, 2011 U.S. Dist. LEXIS 1600, at *7 (D.N.J. Jan. 6, 2011).

Once a party has made a proper showing under Rule 55, the district court must use its discretion in issuing a default judgment. *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984). Before entering a default judgment, the court is required to "(1) determine it has jurisdiction both over the subject matter and parties; (2) determine whether defendants have been properly served; (3) analyze the Complaint to determine whether it sufficiently pleads a cause of action; and (4) determine whether the plaintiff has proved damages." *Moroccanoil, Inc. v. JMG Freight Grp. LLC*, No. 14-5608, 2015 U.S. Dist. LEXIS 147376, at *2 (D.N.J. Oct. 30, 2015).  If Plaintiff can establish these threshold issues, then the Court examines three factors to determine whether entry of a default judgment is appropriate: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).

## V.   DISCUSSION

### a.   Subject Matter and Personal Jurisdiction

"Before entering a default judgment as to a party 'that has not filed responsive pleadings, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties.'" *HICA Educ. Loan Corp. v. Surikov*, No. 14-1045, 2015 U.S. Dist. LEXIS 7054, at *3 (D.N.J. Jan. 22, 2015) (quoting *Ramada Worldwide, Inc. v. Benton Harbor Hari Ohm, L.L.C.*, No. 08-3452, 2007 U.S. Dist. LEXIS 25075, at *9 (D.N.J. July 31, 2008)).

The Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332.  Section 1332 provides that a district court has diversity jurisdiction when: (1) the dispute is between "citizens of different States" and (2) the amount in controversy "exceeds the sum or value of

4

$75,000." 28 U.S.C. § 1332(a)(1).  In determining corporate citizenship for purposes of diversity jurisdiction, "a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1).  Since Continental Casualty Company has both a principal place of business in Illinois, and is incorporated there, Plaintiff is considered a citizen of Illinois.  (Compl. ¶ 1.)

In addition, for purposes of diversity jurisdiction, the citizenship of a limited liability company "is determined by the citizenship of its members."  *See Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015).  In fact, "a limited liability company is a citizen of all the states of its members." *GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 34 (3d Cir. 2018).  Pursuant to the Complaint, Defendant DD Care Management is organized under Florida law, with a principal place of business in Neptune, New Jersey.  (Compl. ¶ 2.)  Defendant is alleged to only have two members, one of whom resides in New York, and one of whom resides in New Jersey.  (*Id.* ¶3.)  As a result, Defendant is considered a citizen of New York and New Jersey.

Damages are also alleged to be $144,105, which is greater than the $75,000 requirement for diversity jurisdiction to be established.  Thus, subject matter jurisdiction exists.

This Court has personal jurisdiction over Defendant as well.  "With respect to a corporation, the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (alteration in original) (internal quotation omitted).  "Courts have applied the *Daimler* rules to limited liability companies with 'equal force.'" *Griggs v. Swift Transp. Co.*, No. 17-13480, 2018 U.S. Dist. LEXIS 139864, at *4 (D.N.J. Aug. 17, 2018).  As a result, "for the purposes of general personal jurisdiction, a limited liability company's citizenship is that of its principal place of business and state of

[formation]." *Rodriquez Rivera v. Loto Grp., LLC*, No. 20-4062, 2020 U.S. Dist. LEXIS 236293, at *3 (D.N.J. Dec. 16, 2020) (quoting *Hannah v. Johnson & Johnson Inc.*, No. 18-10319, 2020 U.S. Dist. LEXIS 113284, at *86-87 (D.N.J. June 29, 2020)).   Here, Plaintiff alleges that Defendant's principal place of business is in Neptune, New Jersey.   (*See* Compl. ¶ 2.)   Because Defendant is at "home" in New Jersey, this Court has personal jurisdiction over Defendant.

> b. *Service of Process*

As a limited liability company, Defendant may be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process."  Fed. R. Civ. P. 4(h)(1)(B).   In the alternative, service can be effectuated by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."  Fed. R. Civ. P. 4(e)(1); *Id.* at 4(h)(1)(A).   Service was allegedly made in New Jersey.   According to New Jersey law, a limited liability company shall be served "by serving a copy of the summons and complaint in the manner prescribed by paragraph (a)(1) of this rule on an officer or managing agent or, in the case of a partnership, a general partner[.]"  N.J. Ct. R. 4:4-4(a)(5).[1]

Here, Plaintiff provides the Court with an Affidavit of Service that is dated January 5, 2022. (ECF No. 5.)   The Affidavit of Service indicates that personal service was made upon Defendant courtesy of the New Jersey Division of Revenue and Enterprise Services.  (*Id.)*  Plaintiff further

---

[1] Paragraph (a)(1) states that service must be made "[u]pon a competent individual of the age of 14 or over, by delivering a copy of the summons and complaint to the individual personally, or by leaving a copy thereof at the individual's dwelling place or usual place of abode with a competent member of the household of the age of 14 or over then residing therein, or by delivering a copy thereof to a person authorized by appointment or by law to receive service of process on the individual's behalf."

provides the Court with the Affirmation of Dennis E. Kadian in support of the Request for a Certificate of Entry of Default and in support of the Motion for Default Judgement, in which he affirms that this action "was commenced by personal service of a Summons and Complaint … upon DD on January 5, 2022." (ECF 6-1 at 1; ECF 7-1 at 1.)

However, the Court notes that Plaintiff served a copy of the Request for Entry of Default and the Motion for Default Judgment and the attached exhibits via United States Postal Service First Class Mail on Joshua Rothenberg, Defendant's alleged registered agent, at 3297 State Route 66 Neptune, New Jersey 07753. (ECF Nos. 5, 7.) Defendant does not provide explanation for why the address on the affidavit of service differs from the address Plaintiff used to serve the Motion for Default Judgment. However, pursuant to New Jersey law:

> [P]rocess in any action in any court of this State directed to the business may be served on the State official or agency, if: (1) the business entity has failed to register or re-register as required by law; or (2) the business entity has failed to maintain a registered address or a registered agent in this State for service of process, as required by law.

> *See* N.J.S.A. 2A:15-30.1(b).

This Court was unable to find a registered address or registered agent for Defendant in the public records maintained by the New Jersey Department of the Treasury, Division of Revenue and Enterprise Services. Accordingly, this Court finds that substitute service on Defendant via the State is proper.

### c. *Sufficiency of Plaintiff's Causes of Action and Damages*

After establishing that this Court has jurisdiction, and that service was proper, the Court must determine whether the Complaint states proper causes of actions.

### i. Count 1: Breach of Contract

Under New Jersey law, a breach of contract claim requires a plaintiff to show: "(1) the parties entered a valid contract; (2) the defendant failed to perform his obligations under the contract; and (3) Plaintiff sustained damages as a result." *Red Roof Franchising, LLC v. Patel*, 564 F. App'x 685, 688 (3d Cir. 2014) (quoting *Murphy v. Implicito*, 920 A.2d 678, 689 (App. Div. 2007)).

Plaintiff alleges that the Policy is a valid, written contract, for the period of November 11, 2019, through November 11, 2020. (Policy at 2.) Plaintiff alleges that it performed its part of the contract by "providing the coverage afforded by the Policy." (Compl. ¶ 9.) Plaintiff then alleges that Defendant failed to make the necessary premium payment pursuant to the Policy, which then caused Plaintiff to suffer damages. (*Id.* ¶¶ 17-19.)

Plaintiff alleges that the Policy premium was based on estimated information provided by Defendant for the effective dates of coverage. (*Id.* ¶ 10.) According to the Policy:

> A premium audit determines the actual insurance exposures for the coverages you have based on an examination of your operation, records and books of account. At issuance, your premium is estimated based on your business circumstances and information provided at that time. An audit verifies the correct exposure of premium base for your insurance coverage by checking actual figures. After your audit, an adjustment will be made to the premium that was estimated when your policy was issued.

(Policy at 24.)

The language of the policy makes clear to the policy holder that their premiums will be adjusted after the audit occurs. Plaintiff also submitted a copy of the Final Audit. (Ex. C.) The Final Audit indicated that Defendant was previously charged $52,759.00 and has a balance of $144,085.[2] (*Id.* at 1.) Because Defendant did not pay the balance, it incurred a $20 late charge.

---

[2] The Court assumes that Defendant paid the previous charges of $52,759 as Plaintiff does not seek it in their Complaint or make mention of being owed the total premium of $196,844.

(Declaration of Debra Branham in Support of Motion for Default Judgment ("Branham Dec.") ECF No. 7-5.)  Plaintiff avers that after multiple repeated attempts, Defendant has not paid the balance of $144,105, which reflects the additional policy premium and the late fee.  (Compl. ¶¶ 18-19.)  Accordingly, Plaintiff's breach of contract claim is sufficiently pled.

Although the facts pled in the Complaint are accepted as true for the purpose of determining liability, the plaintiff must prove damages.  *Moroccanoil*, 2015 U.S. Dist. LEXIS 147376, at *2.  To prove damages, Plaintiff submitted the declaration of Debra Branham, a "Legal Specialist" for Defendant, a copy of the Policy, and a copy of the Final Audit.  Plaintiff seeks the $144,105 in actual damages that resulted when Defendant did not pay the premium balance.  These damages are recoverable as compensatory damages under Plaintiff's breach of contract theory.  In breach of contract claims, courts "most often" award compensatory damages, which "put the innocent party into the position he or she would have achieved had the contract been completed." *Totaro, Duffy, Cannova & Co., L.L.C. v. Lane, Middleton & Co., L.L.C.*, 191 N.J. 1, 12-13 (2007).

The Court finds that Plaintiff is entitled to recover the amount in actual damages it seeks. In their Complaint and in the Affirmation of Dennis E. Kadian in Support of Motion for Default Judgment, Plaintiff also requests "pre-judgment and post judgment interest, attorneys' fees, costs of suit, and such further relief this Court deems just and proper."  (Affirmation of Dennis E. Kadian in Support of Motion for Default Judgment ("Kadian Aff.") ECF No. 7-1 at 2.)  (*See* Compl. at p. 5.)   Plaintiff then requests fourteen (14) days to submit additional information regarding this requested relief.  (Kadian Aff. ¶ 8.)  The Court will permit Plaintiff fourteen (14) days from the day this Opinion and Order issue to update the Court with the necessary information to support Plaintiff's other requested relief.

ii.   Count 2: Accounts Stated

Plaintiff alleges that they are entitled to recover under the theory of accounts stated. "To prevail on an account stated action in the District of New Jersey, where diversity jurisdiction exists, the plaintiff must prove that: (1) there was either an express or an implied agreement as to the amount due; and (2) the account was in fact stated or agreed to." *Razor Enter. Inc. v. Aexim USA Inc.*, No. 11-6788, 2015 U.S. Dist. LEXIS 22463, at *6 (D.N.J. Feb. 24, 2015). And "[s]ilence on behalf of the debtor can result in acquiescence to the sum due if the debtor does not respond for a reasonably long period of time." *Id.* (quoting *Asco Power Techs., L.P. v. Pepco Techs., L.L.C.*, No. 03-1942, 2006 U.S. Dist. LEXIS 76368, at *21-22 (D.N.J. Oct. 20, 2006)).

However, this Court does not need to address an account stated claim for a default judgment if it found adequate allegations for a breach of contract. *See Lincoln Harbor Enters., LLC v. M.Y. Diplomat*, No. 08-526, 2008 U.S. Dist. LEXIS 95004, at *13-14 (D.N.J. Nov. 21, 2008) (determining a court need not address quantum meruit or account stated claims after granting a default judgment on a breach of contract claim because the claims are mutually exclusive*). See also Zurich Am. Ins. Co. v. Option Staffing Servs., LLC*, No. 17-2562, 2017 U.S. Dist. LEXIS 205403, at *5 n.1 (D.N.J. Dec. 13, 2017).

### iii. Count 3: Unjust Enrichment

Finally, Plaintiff puts forth a claim for unjust enrichment. "To establish a claim for unjust enrichment under New Jersey law, a plaintiff must allege 'both that defendant received a benefit and that retention of that benefit without payment would be unjust.'" *Adamson v. Ortho-McNeil Pharm., Inc.,* 463 F. Supp. 2d 496, 505 (D.N.J. 2006) (quoting *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994)). Restitution for unjust enrichment is an equitable remedy, available only when there is no adequate remedy at law. *Id.*

Here, because the Court found that Plaintiff has a valid claim for breach of contract, there is an "adequate remedy at law." *See id*.  Thus, the Court need not decide Plaintiff's unjust enrichment claim.  *See Triboro Hardware & Indus. Supply Corp. v. Greenblum*, No. 19-13416, 2020 U.S. Dist. LEXIS 227052, at *10-11 (D.N.J. Dec. 3, 2020) ("[T]he breach of contract claim, the unjust enrichment claim, and the promissory estoppel claim are all based on the same facts, and [w]hile such claims may be pled in the alternative, at the end of the day, [all three] counts cannot coexist.") (internal citations and quotations omitted).

     d.  *Chamberlain Factors*

Since Plaintiff has successfully pled a breach of contract claim, the Court now examines the equitable factors of default judgment.  *See Chamberlain*, 210 F.3d at 164.  As stated *supra*, the three factors the Court must consider include: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct."  *Id.*  The Court finds all three factors weigh in Plaintiff's favor.

First, the Court determines that Plaintiff will be prejudiced absent a default judgement because based on Plaintiff's submissions, Plaintiff provided the agreed upon insurance coverage without the appropriate compensation.  Further, Plaintiff, without an entry of default judgment, may have no other means to vindicate their claims.  *U.S. v. Hovnanian*, No. 18-15099, 2022 U.S. Dist. LEXIS 56558, at *10-11 (D.N.J. Mar. 29, 2022).

Next, as to the second factor, Defendant has failed to respond with either an Answer or a Motion to Dismiss, so the Court is not aware of any defenses Defendant may have in response to Plaintiff's claims.  *Prudential Ins. Co. v. Taylor*, No. 08-2108, 2009 U.S. Dist. LEXIS 16531, at *3 (D.N.J. Feb. 27, 2009) (noting that because Defendant did "not answer[] or otherwise appear[] in this action, the Court was unable to ascertain whether she has any litigable defenses.").

Finally, "[u]nder the third *Chamberlain* factor, Defendant's failure to respond to Plaintiff['s] requests … is culpable conduct." *U.A. Local 322 Pension Fund v. Kims Mech. L.L.C.*, No. 21-12644, 2022 U.S. Dist. LEXIS 77385, at *5 (D.N.J. Apr. 27, 2022).  According to Plaintiff, it made repeated attempts to collect on the Debt and it never received payment from Defendant. (Compl.¶¶ 18, 24; Branham Dec. ¶ 11.)  Further still, Defendant never responded to Plaintiff's Complaint.  *See U.S. v. DiPiazza*, No. 16-518, 2016 U.S. Dist. LEXIS 165326, at *4 (D.N.J. Nov. 30, 2016) (concluding that "culpable conduct means actions taken willfully or in bad faith," and the failure to respond after service of process "may not necessarily reflect bad faith," but "at the very least it reflects willful conduct.").

## VI.    CONCLUSION

For the reasons set forth above,  Plaintiff's motion for default judgment (ECF  No.  7) is **GRANTED**.  An appropriate Order accompanies this opinion.


Date: <u>July 21, 2022</u>                                     */s/ Georgette Castner*
                                                              GEORGETTE CASTNER, U.S.D.J.